J-S66007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHAD MARSHALL WILCOX | : | |
| | : | |
| Appellant | : | No. 2016 EDA 2017 |

Appeal from the PCRA Order May 23, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0008404-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JANUARY 23, 2019**

Appellant, Chad Marshall Wilcox, appeals *pro se* from the order entered in the Montgomery County Court of Common Pleas, which denied his timely, first petition filed under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. 9541-9546.  We affirm.

The PCRA court opinion sets forth the relevant facts and procedural history of this case as follows:

> **I. FACTUAL    BACKGROUND    AND    PROCEDURAL HISTORY**
>
> [Appellant] entered a negotiated guilty plea on May 11, 2015, to one count of murder of the third degree in exchange for a sentence of 20 to 40 years in prison, one count of burglary in exchange for a consecutive sentence of 10 to 20 years in prison and one count of robbery in exchange for a consecutive sentence of 10 to 20 years in prison.[2]   The Commonwealth agreed to withdraw an additional 13 counts, including murder of the first degree and murder of the second degree.

<sup></sup>

[2] All three offenses were graded as felonies of the first degree, punishable by up to 20 years in prison. ***See*** 18 Pa.C.S. § 1103(1).[1]

[Appellant] admitted as part of his plea agreement that he caused the death of Manuel Hakimian on September 21, 2014, doing so with malice. (N.T., 5/11/15, p. 12). He further admitted that:

> on Saturday, September 20, 2014, [Appellant] was in Philadelphia when [he] began communicating via email with Mr. Hakimian after [he] answered an advertisement that Mr. Hakimian had placed on Craig's List, which is a social medial Website.
>
> Mr. Hakimian's advertisement was soliciting sexual encounters with other men. However, [Appellant's] intention was to meet Mr. Hakimian for the purpose of robbing him.
>
> [Appellant] continued to communicate with Mr. Hakimian via e-mail and text messages on [his] cell phone. The two…agreed that Mr. Hakimian would drive to Philadelphia to meet [Appellant] at the Wyndham Hotel.
>
> In the early morning hours of Sunday, September 21, 2014, Mr. Hakimian drove his Chevrolet Equinox to Philadelphia and picked [Appellant] up at the Wyndham Hotel.
>
> The two then traveled back to Mr. Hakimian's home located at 302 East Logan Street, Norristown,

---

[1] Technically speaking, first degree felonies are generally punishable by up to 20 years in prison per 18 Pa.C.S.A. § 1103. Nevertheless, Section 1102(d) states: "**(d) Third degree.**—Notwithstanding section 1103, a person who has been convicted of murder of the third degree…shall be sentenced to a term which shall be fixed by the court at not more than 40 years." To the extent the PCRA court's footnote two is inconsistent with Section 1102(d) and the agreed-upon sentence, we correct it here.

Montgomery County, for what Mr. Hakimian believed to be a consensual sexual encounter.

After arriving at Mr. Hakimian's home, the two…discussed the details of the sexual encounter.

[Appellant] went to the basement of the house and cut off sections of a clothesline with a knife.

[Appellant] and Mr. Hakimian then went to Mr. Hakimian's second-floor bedroom where [Appellant] tied Mr. Hakimian's wrists and ankles to the bed frame.

At this point, [Appellant] cut Mr. Hakimian's neck with a knife.

[Appellant] then stole Mr. Hakimian's wallet, car keys, Apple laptop computer, a tablet device, and two Apple cell phones.

[Appellant] then went outside and stole Mr. Hakimian's Chevrolet Equinox.

[Appellant] then fled to north Philadelphia where [he] traded the electronic devices for several bags of heroin.

[Appellant] then fled in the Chevrolet Equinox southward through several states to Bowling Green, Kentucky, where [he was] involved in a vehicle pursuit with the police. [Appellant] abandoned the Equinox and escaped on foot.

[Appellant] then made [his] way eventually to Nashville, Tennessee.

During [his] trip south, [Appellant] used Mr. Hakimian's debit and credit cards to make cash withdrawals and to purchase food and merchandise.

[Appellant] later surrendered without incident to the United States Marshals on Sunday, September 28, 2014, in North Carolina on an outstanding arrest

warrant from Lycoming County, Pennsylvania for [his] failure to appear for trial on September 15, 2014.

Subsequently, on October 24, 2014, [Appellant was] arrested on these Montgomery County charges.

On September 22, 2014, an autopsy was performed on Mr. Hakimian by Dr. Erica Williams, who determined that the cause of death was a cutting wound of the neck and that the manner of death was homicide.

Lastly, [Appellant] acted alone in committing this murder, burglary and robbery. And [his] motive for doing this was to obtain money and items that could be used to purchase heroin to feed [his] addiction and also to obtain a vehicle in which [he] could flee from Pennsylvania.

(*Id.* at 12-15).[2]

[Appellant] did not file a post-sentence motion or a direct appeal, making his judgment of sentence final on or about June 11, 2015. Nearly a year later [Appellant] filed a *pro se* PCRA petition.[3] He alleged plea counsel had rendered ineffective assistance by (1) leading him to believe DNA evidence linked him to the scene of the crime, (2) failing to review phone records with him and (3) failing to investigate his accounts of his out-of-court state incarceration during which he gave a statement to police. He also claimed he had not been informed that the Commonwealth had obtained materials to use as handwriting exemplars that allegedly should not have been in the Commonwealth's possession.

[3] The petition was docketed May 11, 2016, and the enclosing envelopes appear to bear the post-mark of May 7, 2016.

This court appointed PCRA counsel who eventually filed a "Memorandum of Law…," a motion to withdraw as counsel,

---

[2] In additional to the oral colloquy, Appellant executed a written guilty plea colloquy and was informed of his post-sentence and appellate rights.

- 4 -

and a no-merit letter advising [Appellant] that should this court grant the motion to withdraw, [Appellant] would be entitled to proceed by representing himself or with privately retained counsel.

This court determined that the documents filed by PCRA counsel, when read together, substantially complied with the requirements of a [no-merit] letter and, after its own independent review of the record, gave defendant notice of its intent to dismiss the petition without a hearing.[3] Appellant filed a *pro se* opposition to the notice.

This court reviewed the opposition and ultimately dismissed the PCRA petition by Order dated May 23, 2017. The Montgomery County Clerk of Courts docketed on June 23, 2017, a *pro se* notice of appeal filed by [Appellant].[4]

> [4] The notice of appeal is facially untimely, having been docketed 31 days after the entry of the Order dismissing the PCRA petition. The enclosing envelope does not appear on the docket, but [Appellant's] "proof of service" bears the date June 19, 2017. [Appellant] also mailed to the undersigned what appears to be a courtesy copy of the notice of appeal, and the enclosing envelope bears the date June 20, 2017.[4]

(PCRA Court Opinion, dated August 18, 2018, at 1-5).

Appellant raises the following issues on appeal:

---

[3] In the Rule 907 notice, the court granted counsel's request to withdraw.

[4] Under the prisoner mailbox rule, we agree with the PCRA court to presume Appellant timely filed his notice of appeal on or before the due date of June 22, 2017. *See Commonwealth v. Chambers*, 35 A.3d 34 (Pa.Super. 2011), *appeal denied*, 616 Pa. 625, 46 A.3d 715 (2012) (explaining prisoner mailbox rule provides that document is considered filed on date *pro se* prisoner delivers it to prison authorities for mailing). Given that the Montgomery County Clerk of Courts received and docketed the notice of appeal on June 23, 2017, it stands to reason Appellant put his notice of appeal in the prison mail system no later than the due date of June 22, 2017.

WAS PLEA COUNSEL INEFFECTIVE BY PRESENTING FALSE INFORMATION AS FACT, RENDERING [APPELLANT]'S PLEA OF GUILT INVOLUNTARY?

WAS PCRA COUNSEL INEFFECTIVE BY FAILING TO AMEND [APPELLANT]'S PETITION, IGNORING ALL COMMUNICATION FROM CLIENT, AND IGNORING THE UNDERLYING CLAIM OF PLEA COUNSEL'S INEFFECTIVENESS?

DID [THE] PCRA COURT ERR IN ITS FINAL DISMISSAL AFTER REVIEW OF [APPELLANT]'S OBJECTION TO [THE] COURT'S NOTICE OF INTENT TO DISMISS PURSUANT TO PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 907?

(Appellant's Brief at 6).

Appellant claims plea counsel gave Appellant false information that persuaded Appellant to plead guilty. Specifically, Appellant asserts plea counsel lied to Appellant that his DNA evidence was recovered from the scene of the crime. Appellant states counsel presented Appellant with a draft plea agreement, while they were waiting for the hearing on Appellant's motion to suppress his allegedly coerced statement to the authorities, and urged Appellant to take the plea as a result. But for this "false" information presented to Appellant as fact, he insists he would have continued with the suppression hearing and gone to trial. Appellant further argues PCRA counsel essentially ignored him and denied him the opportunity to amend his petition and bring to full light Appellant's underlying issues with plea counsel. Appellant also complains the court wrongly dismissed his PCRA petition without a hearing, given the material issues of fact surrounding the DNA evidence and the information he received from plea counsel. Appellant

concludes he is entitled to withdraw his guilty plea or, in the alternative, obtain a remand for the appointment of new counsel to file an amended petition, and for a hearing on his claims. We cannot agree.

Our standard of review of the denial of a PCRA petition is limited to whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101, 109 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no like deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012); Pa.R.Crim.P. 907.

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit, (2) counsel had no reasonable strategic basis for his action or inaction, and, (3) but for

the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams, supra***.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [***Kimball, supra***], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002)

(some internal citations and quotation marks omitted). To establish prejudice in the context of a guilty plea, the petitioner must show a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. **Commonwealth v. Lippert**, 85 A.3d 1095, 1100 (Pa.Super. 2014), *appeal denied*, 626 Pa. 683, 95 A.3d 277 (2014).

Claims of ineffective assistance of counsel arising from the plea-bargaining process are eligible for PCRA review. **Commonwealth ex rel. Dadario v. Goldberg**, 565 Pa. 280, 773 A.2d 126 (2001) (holding all constitutionally recognized claims of ineffective assistance are cognizable under PCRA). "Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." **Commonwealth v. Moser**, 921 A.2d 526, 531 (Pa.Super. 2007) (quoting **Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa.Super. 2002)). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." **Moser, supra**.

> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, …under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to

- 9 -

all post-sentence motions to withdraw a guilty plea.

*Commonwealth v. Morrison*, 878 A.2d 102, 105 (Pa.Super. 2005) (*en banc*), *appeal denied*, 585 Pa. 688, 887 A.2d 1241 (2005) (internal citations omitted).

A valid guilty plea must be knowingly, voluntarily and intelligently entered. *Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa.Super. 2003). A guilty plea will be deemed valid if the totality of the circumstances surrounding the plea shows that the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. *Commonwealth v. Fluharty*, 632 A.2d 312, 314-15 (Pa.Super. 1993). The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. *Commonwealth v. Hodges*, 789 A.2d 764 (Pa.Super. 2002) (citing Pa.R.Crim.P. 590). Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement. *Commonwealth v. Watson*, 835 A.2d 786 (Pa.Super. 2003). The reviewing Court will evaluate the adequacy of the plea proceedings and

the voluntariness of the resulting plea based on the totality of the circumstances surrounding its entry. *Commonwealth v. Muhammad*, 794 A.2d 378, 383-84 (Pa.Super. 2002). "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Pollard, supra* at 523. The person who elects to plead guilty has the duty to answer the colloquy questions truthfully. *Id.* at 524. Pennsylvania law presumes a defendant knew what he was doing when he entered his guilty plea, so he bears the burden to prove otherwise. *Commonwealth v. Yoemans*, 24 A.3d 1044, 1047 (Pa.Super. 2011).

In response to Appellant's PCRA petition, the court reasoned:

## II. DISCUSSION

### [Appellant] is not entitled to post-conviction relief.

[Appellant] asserted in his *pro se* petition that plea counsel had been ineffective by (1) leading [Appellant] to believe DNA evidence linked him to the scene of the crime, (2) failing to review phone records with him and (3) failing to investigate his accounts of his out-of-court state incarceration during which he gave a statement to police. He also alleged he did not know the Commonwealth had obtained materials from Lycoming County to use as handwriting exemplars. None of these claims entitle [Appellant] to post-conviction relief.

\* \* \*

Here, [Appellant] admitted to an extensive factual basis in connection with his negotiated guilty plea. He cannot contradict that sworn testimony now to win post-conviction

- 11 -

relief. Moreover, with regard to his claim about DNA evidence, as PCRA counsel explained in his "Memorandum of Law," such evidence did link [Appellant] to the crimes to which he pleaded guilty.

[Appellant] also does not allege how plea counsel's alleged failure to review phone records would have changed his decision to plead guilty. Rather, [Appellant] stated under oath at the guilty plea hearing that he had sufficient time to discuss his case with plea counsel and was satisfied with plea counsel's representation. He cannot contradict that sworn testimony.

[Appellant], further, does not state how counsel's alleged failure to investigate [Appellant's] account of his out-of-state incarceration would have impacted his decision to plead guilty. To the contrary, [Appellant] asserts that plea counsel filed a motion to suppress the statement [Appellant] made during that incarceration but then admits that counsel later learned of such damaging evidence against [Appellant] that counsel believed a negotiated guilty plea became the better outcome. … The evidence, as borne out by the factual basis, [overwhelmingly] demonstrated [Appellant's] commission of the charged offenses and the reasonableness of counsel's conclusion.

Finally, [Appellant] did not detail how the Commonwealth allegedly came into inappropriate possession of handwriting samples or how plea counsel's alleged failure to inform him about the samples would have changed his decision to plead guilty. [Appellant], thus, did not present any meritorious claims warranting a hearing.

Even more damaging to [Appellant's] attempt at post-conviction relief, he cannot demonstrate prejudice from alleged counsel ineffectiveness. [Appellant] faced more than a dozen serious charges and overwhelming evidence of his guilt. Through a negotiated plea, the Commonwealth agreed to withdraw all but three of the charges, including first and second degree murder and their possibility of a mandatory life sentence without parole. As such, [Appellant] is not entitled to post-conviction relief and this court properly dismissed his PCRA petition without a hearing.

## II. CONCLUSION

Based upon the foregoing, the Order dismissing [Appellant's] PCRA petition without a hearing should be affirmed.

(PCRA Court Opinion at 5-8). The record supports the court's decision. Appellant's written plea colloquy and his detailed oral plea colloquy in this case demonstrate Appellant knew (a) he was pleading guilty to specific, reduced offenses; (b) the rights he relinquished as a result of pleading guilty; (c) his satisfaction with counsel's assistance in the process; and (d) the parameters of his sentence. ***See Watson, supra***. Appellant is bound by the affirmative statements he made during his plea hearing. ***See Pollard, supra***. Moreover, the evidence of record strongly implicated Appellant in the murder of Mr. Hakimian, such that Appellant's guilty plea was no aberration or naïve undertaking. Thus, any minor "misunderstandings" Appellant might have had about the evidence against him or how it was obtained does not invalidate his plea or call it into question.[5] Therefore, the PCRA court properly denied PCRA relief.[6] Accordingly, we affirm.

Order affirmed.

_____

[5] The DNA analysis and the study attached to Appellant's brief did not exclude his presence at the crime scene. ***See, e.g.,*** Forensic Biology Laboratory Report, dated 12/08/14, at 2 (Item 9, Swab #2 "right ankle of victim") and at 6 (Item 9—Swab #2), attached as Appendix "c" to Appellant's Brief.

[6] Appellant's open motion to strike the Commonwealth's brief on appeal is denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/19