J-A25043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JIHAD RAGUEEB BASHIR | : | |
| | : | |
| Appellant | : | No. 197 MDA 2020 |

Appeal from the PCRA Order Entered January 8, 2020
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0007373-2012

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:          **FILED: JANUARY 15, 2021**

Appellant, Jihad Ragueeb Bashir, appeals from the order entered in the York County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA") at 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The relevant facts and procedural history of this case are as follows:

> [Appellant]'s convictions arose from the September 6, 2011 shooting of [Victim], who testified as follows.  On the night in question, [Victim] and his aunt were smoking cigarettes outside the home of [Victim]'s mother on 207 Jefferson Avenue, York.  [Victim]'s aunt entered the house to use the bathroom, and [Victim] remained outside.  [Victim] looked to the right, to the left, and again to the right.  When he turned back to look left, [Victim] saw "a guy standing in front of [him]."
>
> At that time [Victim] was not impaired, and the man was ten feet away.  [Victim] recognized the person and identified him at trial as [Appellant].  [Appellant] asked [Victim] where [Victim]'s nephew "Blizz" was located.   [Appellant] then

"started fumbling around,…pulled out a gun," and shot [Victim] in the face with a .357 Magnum. After shooting [Victim] a single time, [Appellant] ran away.

[Victim] explained that he recognized [Appellant] because [Appellant]'s mother had introduced [Appellant] to [Victim]. [Victim] also saw [Appellant] two weeks prior to the incident seated in a car. At that time, [Victim] overheard [Appellant] telling someone that his name was [Appellant]. [Victim] testified that he did not initially remember who shot him, but when his memory returned in November, he called his mother and told her that [Appellant], who was Tanoue's son, had committed the crime.

Eartha, [Victim]'s mother, confirmed that, in November 2011, while [Victim] was still hospitalized, he called her on the telephone and said, "[I] remember now, I know who shot me, and he said [Appellant]. He said big Tanoue's son." [Victim's mother] did not know [Appellant] but was acquainted with his mother, whose first name was Tanoue. [Victim]'s brother, Michael, also testified that, in November 2011, [Victim]'s memory of the events of the shooting returned. [Victim] also told Michael that [Appellant], Tanoue's son, was his assailant.

York Detective Travis Sowers testified that he was the lead detective in the investigation into the shooting. After [Victim] returned to his mother's home from the hospital and rehabilitation, Detective Sowers visited him. Detective Sowers testified, "I asked him who shot him. He advised me [Appellant]. The next thing I asked, [Appellant]? And he said, yes, the one who lives on South Street." Detective Sowers told the jury that [Appellant] lived with his mother, Tanoue…, at 21 East South Street. Five days after this first interview, Detective Sowers showed [Victim] [Appellant]'s picture, and "he hit the picture and said that's the guy who shot me right there, that's Tanoue's son[.]"

Based upon this evidence, a jury convicted [Appellant] of attempted murder and aggravated assault graded as a first-degree felony. The matter proceeded to sentencing on May 1, 2014, where the court imposed a twenty to forty year term of imprisonment as to the attempted murder and no penalty on aggravated assault since that crime merged for

sentencing purposes.

(PCRA Court Opinion, filed January 6, 2020, at 1-3) (internal citations omitted). This Court affirmed the judgment of sentence on June 4, 2015, and our Supreme Court denied allowance of appeal on December 17, 2015. **See Commonwealth v. Bashir**, 122 A.3d 1124 (Pa.Super. 2015) (unpublished memorandum), *appeal denied*, 634 Pa. 724, 128 A.3d 1204 (2015).

On August 24, 2016, Appellant filed a timely PCRA petition *pro se*, and the PCRA court subsequently appointed counsel. Counsel filed an amended petition on February 21, 2017, and a second amended petition on April 3, 2017. In the petitions, Appellant argued, *inter alia*, that trial counsel failed to call an expert witness who could have addressed Victim's competency to testify and failed to file a motion to challenge Victim's competency. Appellant also requested fees to retain Dr. Amy Taylor, an expert in forensic psychology, to meet with Victim and determine if he had been competent to testify at trial. Following a status hearing on April 25, 2017, the court granted Appellant's request for fees to retain Dr. Taylor, but limited Dr. Taylor's report to a review of Victim's medical records prior to trial and did not permit a face-to-face interview with Victim.

Following changes in counsel, current PCRA counsel filed another amended petition on September 30, 2019, and the court conducted a PCRA hearing on October 30, 2019. Detective Sowers, Dr. Taylor, and trial counsel testified at the hearing. Detective Sowers repeated much of his trial testimony

regarding Victim's identification of Appellant. Dr. Taylor testified that she studied Victim's medical records from September 2011 to August 2012, and while she could not provide an opinion as to Victim's competency to testify at the time of trial, she stated that had she been consulted prior to trial, she would have suggested that a competency evaluation of Victim be conducted.

Trial counsel testified that she addressed Victim's hallucinations, brain swelling, and inconsistencies in his memory by calling or cross-examining various medical and lay witnesses, including psychiatrist, Dr. Stephen Dilts; Dr. Daniel Carney, the emergency room doctor who treated Victim following the shooting; and Lori Genovese, the medical custodian of records. Trial counsel testified that she and Appellant had numerous conversations about the problems with Victim's memory and Victim's identification of Appellant. Trial counsel, however, conceded that she did not review or consider Pennsylvania Rule of Evidence 601 prior to Appellant's trial, and had never previously challenged an adult witness' competency. Trial counsel further stated that she did not consider challenging Victim's competency or hiring an expert to assist in doing so, and now believes her failure to do so was a mistake. Trial counsel also stated that she should have filed a motion to suppress Victim's identification of Appellant based on Victim's memory issues.

The PCRA court denied relief on January 8, 2020. On January 24, 2020, Appellant filed a timely notice of appeal. On January 27, 2020, the court ordered Appellant to file a concise statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(b); Appellant complied on February 24, 2020.

Appellant raises the following issues on appeal:

> Whether the [PCRA] court erred and abused its discretion by finding that Appellant's trial counsel was not ineffective for failing to file a motion challenging the competency of the victim?
>
> Whether the [PCRA] court erred and abused its discretion by finding that Appellant's trial counsel was not ineffective for failing to consult with an expert witness to opine whether or not the victim was competent to testify pursuant to Pa.R.[E.] 601?
>
> Whether the [PCRA] court erred and abused its discretion by finding that Appellant's trial counsel was not ineffective for failing to file a motion to suppress the victim's identification of Appellant, which was the product of police suggestiveness and confabulation by the victim?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. *Commonwealth v. Abu-*

***Jamal***, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." ***Commonwealth v. Johnson***, 600 Pa. 329, 356-357, 966 A.2d 523, 539 (2009).

Pennsylvania law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for her action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams, supra***.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate [her] client's interests. If we conclude that the particular course chosen by counsel had

some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

In his first issue, Appellant argues trial counsel was ineffective for failing to file a motion to challenge Victim's competency to testify. Appellant contends Victim suffered a gunshot wound to the head that caused "severe brain injuries, hallucinations, and the inability to separate confabulation from reality," and was diagnosed with "dementia secondary to a traumatic brain injury." (Appellant's Brief at 12-13). Appellant claims these injuries prevented Victim from initially remembering who shot him, as Victim did not identify Appellant as his assailant until several months after the attack. Appellant suggests that someone could have told Victim to incriminate Appellant, or Victim might have hallucinated that Appellant was his attacker. Appellant avers he has always maintained his innocence of the crime, and no other evidence outside of Victim's testimony points toward his guilt.

Appellant further emphasizes Dr. Taylor's opinion that Victim should have been examined by a psychologist prior to trial to determine whether his traumatic brain injury prevented him from remembering who shot him. Appellant maintains Victim's injuries, symptoms, and diagnosis, as well as the delay in identification, were sufficient to prove Victim's incompetency under Rule 601 of the Pennsylvania Rules of Evidence. Appellant concludes this Court should reverse the PCRA court's order and grant him a new trial. We disagree.

As a general matter, the Pennsylvania Rules of Evidence presume all persons are competent to be a witness. Pa.R.E. 601(a). Specifically, Rule 601 provides, in pertinent part:

> **Rule 601. Competency**
>
> **(a) General Rule.** Every person is competent to be a witness except as otherwise provided by statute or in these rules.
>
> **(b) Disqualification for Specific Defects.** A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
>
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
>
> (2) is unable to express himself…so as to be understood either directly or through an interpreter;
>
> (3) has an impaired memory; or
>
> (4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601. This Court has interpreted Rule 601 as follows:

> In general, the testimony of any person, regardless of his mental condition, is competent evidence, unless it contributes nothing at all because the victim is wholly untrustworthy. Thus, in Pennsylvania, [a witness is] presumed competent to testify, and it is incumbent upon the party challenging the testimony to establish incompetence. **Above all, given the general presumption of competency of all witnesses, a court ought not to order a competency investigation, unless the court has actually observed the witness testify and still has doubts about the witness' competency.**
>
> Claims that a witness' memory has been corrupted by insanity, mental retardation, hypnosis, or taint go to the competency of that witness to testify. The capacity to remember and the ability to testify truthfully about the matter remembered are components of testimonial competency. The party alleging a witness is incompetent to testify must prove that contention by clear and convincing evidence.

*Commonwealth v. Boich*, 982 A.2d 102, 109-10 (Pa.Super. 2009) (*en banc*), *appeal denied*, 607 Pa. 689, 3 A.3d 669 (2010) (internal citations and quotation marks omitted) (emphasis added).

Instantly, in addressing this issue, the PCRA court reasoned, in pertinent part, as follows:

> The trial court observed [Victim] testify at trial and, a few months after the trial at [Appellant]'s post-sentence motion hearing, this [c]ourt affirmed [Victim]'s obvious competency to testify at trial. At that time this [c]ourt stated, "[Victim] testified he identified [Appellant] as the shooter. When his testimony was presented, there was no indication in the eyes of the [c]ourt that he was incompetent or unable to reason, or had any sort of cognitive defect that rendered him unable to testify or to be incompetent. The jury could rely upon his testimony." The [c]ourt, at that time, had the benefit of recently and directly witnessing [Victim]'s testimony and found that [Victim] satisfied the factors for determining competency laid out by the Pennsylvania

Supreme Court: "(1) the capacity to perceive an event with accuracy; (2) the ability to remember; (3) the ability to understand questions and communicate a response; and (4) a consciousness of the duty to tell the truth."

The [c]ourt also had the benefit of the testimony of Dr. Stephen Dilts, a defense witness, who testified at length at trial regarding the potential defects in [Victim]'s reasoning caused by [Appellant]'s infliction of a gunshot wound to [Victim]'s brain. Dr. Dilts, a qualified psychiatrist, testified before the [c]ourt and jury regarding [Victim]'s possible loss of perception and memory. This [c]ourt, with the insight provided by the psychiatrist's expert testimony, found [Victim] competent to testify. Under Rule 601(b), a determination of a witness's competency is ultimately in the hands of the trial court. Because there was not a reasonable probability that this [c]ourt would have found [Victim] incompetent to stand trial even if his trial counsel had filed a motion challenging his competence, [Appellant] was not prejudiced by the choice to not submit such a motion and his claim is denied.[2]

> [2] To eliminate any doubt caused by the revisionist approach of this PCRA, [Victim] at the time of his trial presented no indication of lack of competency. He did have some recollection issues, which were no different than any other fact witness. [Appellant] repeatedly confuses the concepts of impeachment regarding memory accuracy and lack of competency in his PCRA. The ability to remember is one factor in determining competency…. Having a flawless memory is not.

(PCRA Court Opinion at 6-7) (internal citations omitted). We see no reason to disrupt the PCRA court's reasoning. As the PCRA court explained, the trial court witnessed Victim's testimony and had no doubts as to Victim's competency. *See Boich, supra*. Thus, Appellant's ineffectiveness claim fails. *See Kimball, supra*.

In his second issue, Appellant argues trial counsel was ineffective for

- 10 -

failing to consult with an expert witness regarding Victim's competency. Appellant alleges trial counsel was aware of Victim's medical history and related cognitive and memory issues. Appellant contends that despite this information, counsel admitted she never reviewed Rule 601, considered filing a competency motion, or retained the services of an expert witness to evaluate Victim's competency prior to trial. Appellant further emphasizes that counsel admitted at the PCRA hearing that it was an error not to challenge Victim's competency or hire an expert witness to evaluate him.

Appellant highlights Dr. Taylor's PCRA hearing testimony that Victim was experiencing dementia following the shooting and prior to trial, which warranted a psychiatric examination to determine whether he was competent to testify. Appellant asserts that had trial counsel consulted with Dr. Taylor regarding Victim's competency prior to trial, there is a reasonable probability that the trial court would have ordered Victim to undergo a psychiatric examination or disqualified him as a witness pursuant to Rule 601. Appellant concludes this Court should reverse the PCRA court's order and remand for a new trial. We disagree.

In response to Appellant's claims, the PCRA court explained:

> [Appellant]…argues that his trial counsel was ineffective for failing to consult with an expert witness [regarding] whether [Victim] was medically competent to testify as a witness in this case pursuant to Pa.R.E. 601. … [Appellant]'s trial counsel had an expert witness testify at trial regarding the extent and severity of [Victim]'s injuries and their potential effects on [Victim]'s cognition. Hiring another expert merely to advise trial counsel on whether to file a competency

- 11 -

evaluation would have been an unreasonable course of conduct for trial counsel, a public defender, when the judge and jury already had the benefit of the testimony of a qualified expert who had personally interviewed [Victim] during his recovery before trial.

This case evolved over a continuum of time that began with the shooting and ended with the trial. The PCRA defense has repeatedly sought to mix medical facts and brain trauma conditions that may have existed right after [Victim] was shot (and then resolved), and to bootstrap those impairments into creating an argument that a competency evaluation was needed during judicial proceedings before [Victim] testified. This argument is built on a foundation of faulty logic that ignores that [Victim] significantly healed and recovered his memory prior to trial. This healing and progress was reflected in the medical testimony at trial. The fact that the defense counsel did not choose to pursue this same path of faulty logic is not ineffectiveness—it was good lawyering, by not pursuing a meritless position.

As part of his PCRA proceedings, [Appellant] hired a forensic psychologist, Dr. Amy Taylor, to create a report, based on trial transcripts and a review of [Victim]'s past psychological and medical evaluations. She was not granted a face-to-face interview with [Victim]. She sought to analyze [Victim]'s potential competence at the time of trial from records created years earlier. [Appellant] argues Dr. Taylor's report, created four years after [Appellant]'s trial concluded, shows that [Victim] should have received a mental competency evaluation prior to giving testimony at trial. This is not true. The report was inconclusive at best. The most the forensic expert could testify to was that, based on her review of past records, if she had been consulted prior to the trial, she would have recommended that the [c]ourt order a psychological examination of [Victim] to determine whether or not he was medically competent to testify. Dr. Taylor made it clear that since she was not personally at the trial and did not have the opportunity to interview the witness, her conclusions could not be made with a reasonable degree of psychological certainty. Her testimony, five years after the trial, does not convince this [c]ourt, which had the benefit of examining [Victim] directly, that hiring a second expert prior to trial to expound

on [Victim]'s competence would have been a reasonable course of action.

(PCRA Court Opinion at 9-11) (internal citations omitted).  We agree with the PCRA court's analysis of this issue.  Trial counsel had an expert witness testify at trial concerning Victim's injuries and their effect on Victim's memory and cognition.  Appellant is unable to show that trial counsel's failure to consult with an additional expert witness concerning Victim's competency to testify was unreasonable.[1]  ***See Pierce, supra***.

In his third issue, Appellant argues trial counsel was ineffective for failing to file a pre-trial motion to suppress Victim's identification of Appellant as unduly suggestive.  Appellant emphasizes that Victim was shot in the head, suffered severe brain damage, and was hospitalized for a lengthy period of time following the September 6, 2011 attack.  Appellant avers that police received information from a third party on May 3, 2012, that Victim named Appellant as the shooter.  Appellant asserts that on May 8, 2012, a police officer arrived at Victim's home to find Victim sleeping and disoriented.  Appellant claims the officer showed Victim a photo lineup with Appellant's

_____

[1] To the extent Appellant alleges trial counsel's ineffectiveness for failing to call another expert witness to testify at trial (as opposed to consulting an expert witness pre-trial), this claim is waived for Appellant's failure to specify it in his Rule 1925(b) statement.  ***See Commonwealth v. Castillo***, 585 Pa. 395, 888 A.2d 775 (2005) (stating issues not raised in Rule 1925(b) statement will be deemed waived for appellate review).  ***See also Commonwealth v. Reeves***, 907 A.2d 1 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007) (explaining Rule 1925(b) statement that is not specific enough for court to identify and address issues may also result in waiver).

picture in it, but Victim was unable to identify the shooter. Appellant contends the officer then showed Victim a single enlarged photograph of Appellant and asked if that was the person who shot Victim; Victim stated it was. Given the nature of Victim's injuries and his previous inability to make an identification, Appellant asserts that the officer's presentation to Victim of a single photograph of Appellant was unduly suggestive. Appellant maintains that trial counsel's failure to file a motion to suppress Victim's identification was objectively unreasonable, and that Appellant was prejudiced by counsel's failure to do so. Appellant concludes this Court should reverse the PCRA court's order and remand for a new trial. We disagree.

"When…an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim." *Commonwealth v. Carelli*, 546 A.2d 1185, 1189 (Pa.Super. 1988), *appeal denied*, 521 Pa. 609, 557 A.2d 341 (1989) (citations omitted). Furthermore,

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable…. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty

demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors.

*Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa.Super. 2003), *appeal denied*, 578 Pa. 694, 851 A.2d 142 (2004).

Instantly, the PCRA court addressed this issue, in pertinent part, as follows:

[Appellant] argues the identification procedure used by the police was unduly suggestive given the totality of the circumstances. [Appellant] alleges the suggestiveness comes from the detective showing [Victim] [Appellant]'s picture singly, after getting a lethargic response during a full photographic line-up. [Appellant] claims his trial counsel was ineffective because she did not try to suppress this out-of-court identification. The claim is rejected because the record clearly shows [Victim] had previously identified [Appellant] verbally before the allegedly suggestive photographic lineup and there was an obvious independent basis for the identification. [Victim] testified at trial that he knew who [Appellant] was through his prior acquaintance with [Appellant]'s mother, Tanoue..., who he knew lived on the "South Side" of town. This is part of the independent basis for [Victim]'s knowledge of [Appellant]'s identity outside the photo lineup. [Appellant] is correct that the suggestiveness of an out-of-court identification must be determined by the totality of the circumstances, but in this case, the totality does not weigh in his favor.

As the Superior Court noted in [its] opinion rejecting [Appellant]'s claim that [Victim]'s identification was against the weight of the evidence, "Two witnesses, [Victim]'s mother and brother, confirmed that [Victim] recalled who perpetrated the crime a couple of months after the shooting. [Victim] thereafter identified Appellant as the shooter, and he knew the name of Appellant's mother and where they lived." These identifications were prior to and independent of the allegedly suggestive photo lineup. [Victim] also identified [Appellant] by name and street to the detective

who administered the photo lineup five days prior to viewing the photos. The detective administered the photo lineup…as an extra measure to ensure the Commonwealth had the best foundation for its investigation. The Commonwealth already had sufficient identification evidence from [Victim] to create an independent basis for an identification even without the photo lineup. The photos were in fact surplusage to identify the shooter by the time [Victim] was shown [Appellant]'s single photo.

The issue before the [c]ourt is whether [Appellant]'s trial counsel was ineffective for failing to file a suppression motion regarding [Victim]'s identification of [Appellant]. This [c]ourt finds that such a motion would have been without merit given the independent basis for [Victim]'s identification of [Appellant] by reference to his mother and address. The precedent in this matter is clear that when there is an independent basis for an identification, with enough independence to overcome the suggestiveness of a photo lineup by clear and convincing evidence given the totality of the circumstances, then the in-court identification of [Appellant] will be admissible. …

\* \* \*

The factors in this case weigh in favor of finding an independent basis for [Victim]'s identification of [Appellant]. … The identification's independent origin negates the argument that [Victim]'s identification was the result of a suggestive procedure. The independent basis comes from [Victim]'s prior encounter with [Appellant] weeks before the shooting took place, from his having a clear view of [Appellant] right before he was shot, from [Victim]'s identification of [Appellant] to his mother and brother before the photo lineup, and his identification of [Appellant] to the detective five-days before the photo lineup. Taking the independent origins of [Victim]'s identification into account, this [c]ourt holds that it was reasonable for [Appellant]'s trial counsel to not file a suppression [motion] that would not have successfully blocked the admission of [Victim]'s identification.

(PCRA Court Opinion at 12-14; 16-17) (internal citations and footnotes

omitted). Again, we agree with the PCRA court's analysis. Here, Victim provided an independent identification of Appellant prior to the allegedly suggestive photo identification. Victim identified Appellant by name and street address, and even identified Appellant's mother. Thus, any suppression motion counsel filed based upon the allegedly suggestive photo identification would have failed, and counsel cannot be deemed ineffective for failing to file a meritless suppression motion. *See Poplawski, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/15/2021