**COMMONWEALTH of Pennsylvania,**
**Appellant**

**v.**

**Chad Elliott POPLAWSKI, Appellee.**

Superior Court of Pennsylvania.

Submitted March 15, 2004.

Filed June 4, 2004.

Lance T. Marshall, Asst. Dist. Atty., Bellefonte, for Com.

Jules Epstein, Philadelphia, for appellee.

Before: LALLY–GREEN, TODD, and CAVANAUGH, JJ.

LALLY–GREEN, J.:

¶ 1 The Commonwealth appeals from the order entered on January 27, 2003, granting a new trial to Appellee Chad Elliott Poplawski under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.[1] We affirm.

¶ 2 On direct appeal, this Court summarized the factual and procedural history of the case as follows:

[Poplawski] and the victim, Ikechukwu Iregbulem, had a history of confrontations. In the late evening of January 28, 1999, [Poplawski] was taunting the victim at a nightclub. He told the victim that he knew where he lived and was "going to spray his crib", meaning he was going to shoot at his house. The victim and his friends then decided to leave. Then, [Poplawski] and his friend, [Andre] Cuadrado, who also had a history of altercations with the victim, decided to leave. While the victim and his friends were walking to their cars, [Poplawski] drove past them, honking his horn. The victim drove to his girlfriend's apartment, where he was staying, which was in the same complex as [Poplawski's], and his friends followed them. In the parking lot of the complex, [Poplawski] and his friend were waiting. An argument ensued which erupted into a physical altercation. Soon thereafter, everyone was fighting. [Poplawski] managed to break away and went to his apartment for his gun. The fight ended, and the victim and his friends were leav-

1. The Commonwealth may appeal as a matter of right from an order granting a new trial to a criminal defendant, where the Commonwealth argues that the court erred as a matter of law. Pa.R.A.P. 311(a)(6).

ing in their vehicles, when [Poplawski] returned and shot at them with a semi-automatic, Russian military assault rifle. [Poplawski] and Cuadrado returned to [Poplawski's] apartment, where he was met by his roommate Vaughn Whiskers, who wanted no part of the situation. [Poplawski] then decided to hide the gun at his girlfriend's apartment. The neighbors, who had heard the shots, called the police. They questioned [Poplawski] and other witnesses. [Poplawski] told them about the verbal altercation, but denied everything else. The police did not arrest [Poplawski] at this time. [Poplawski] then tried to calm Whiskers by explaining the events to him. He claimed that he hadn't shot at anyone and he hoped that he hadn't hit anyone.

[Poplawski] was charged with criminal attempt, two counts of aggravated assault, terroristic threats, two counts of simple assault, reckless endangerment of another person, disorderly conduct and discharge of firearms. On August 26, 1999, the trial court granted the Commonwealth's Motion in Limine, which precluded [Poplawski] from presenting Whisker[s'] testimony about [Poplawski's] alleged state of mind. On September 1 and 2, 1999, a jury tried and convicted [Poplawski] of two counts of aggravated assault, terroristic threats, two counts of simple assault, recklessly endangering another person and disorderly conduct. The trial court sentenced [Poplawski] on October 5, 1999. He filed post-sentence motions, which the trial court denied.

*Commonwealth v. Poplawski*, 778 A.2d 737 (Pa.Super.2001) (unpublished memorandum) at 1–3 (citations omitted).

¶ 3 On direct appeal, Poplawski alleged that the trial court erred by: (1) not allowing him to present character witnesses on his behalf; (2) precluding him from presenting third-party testimony concerning his state of mind on the night of the shooting; and (3) allowing the Commonwealth to present a large volume of testimony concerning prior incidents among Poplawski, the victim, and others. *Id.* at 3–4. This Court rejected all three claims on the merits. On December 12, 2001, our Supreme Court denied Poplawski's petition for allowance of appeal. *Commonwealth v. Poplawski*, 568 Pa. 617, 792 A.2d 1253 (2001).

¶ 4 On April 26, 2002, Poplawski filed a timely PCRA petition. The PCRA court held an evidentiary hearing on August 21, 2002. Poplawski's trial counsel, James Heidecker, Esq., was the only witness to testify. During the hearing, Poplawski litigated many claims of trial counsel's ineffectiveness.

¶ 5 On January 27, 2003, the PCRA court granted a new trial to Poplawski on two independent bases. First, the PCRA court found that trial counsel was ineffective for eliciting evidence that after Poplawski was arrested, he dropped out of Penn State rather than testify about his case in front of a Penn State judiciary panel. The court found that the evidence constituted an improper reference to post-arrest silence. PCRA Court Opinion, 1/27/2003, at 12. Moreover, according to the PCRA court, trial counsel failed to take adequate steps to preclude the Commonwealth from exploiting this evidence in the prosecution's closing argument. The court concluded that the issue had arguable merit, that counsel had no reasonable explanation for his actions, and that the error was not harmless. *Id.*

¶ 6 Next, the PCRA court granted Poplawski a new trial based on counsel's failure to object to the Commonwealth's opening and closing statements. Specifically, the prosecutor advised the jury that

acquitting Poplawski would send a message that the jury endorsed bringing guns into the community. *Id.* at 13. Again, the PCRA court found that the issue had arguable merit, that counsel had no reasonable basis for failing to object, and that the remarks prejudiced Poplawski by injecting bias and hostility toward him. *Id.* at 14–15. This appeal by the Commonwealth followed.[2]

¶ 7 The Commonwealth raises four issues on appeal:

1. Whether the two areas of alleged ineffectiveness attributed to trial counsel relating to his allowing or causing the referencing of petitioner's election to follow his university's advise [sic] and forego a school disciplinary hearing until after his criminal trial or the failure of counsel to object to or ask for curative instructions following comments made by the Commonwealth during its opening statement and closing argument must be deemed harmless error given the overwhelming evidence of guilt established by properly admitted and uncontradicted evidence?

2. Whether the [PCRA] court committed an abuse of discretion or error of law in determining that the revelation during his direct examination that the petitioner elected to withdraw from Penn State, upon advise [sic] from a Penn State official, and not participate in a school disciplinary hearing until after his trial, is the legal equivalent to referencing

his exercising his Fifth Amendment right to remain silent while in police custody, during police interrogation or at the time of arrest subsequent to being given *"Miranda"* warnings?

3. Whether the [PCRA] court committed an error of law or an abuse of discretion in determining that certain comments made by the Commonwealth during the trial amounted to "prosecutorial misconduct"?

4. Whether the [PCRA] court committed an abuse of discretion or an error of law in concluding that certain comments made by the Commonwealth amounted to "prosecutorial misconduct" given the fact that the court had previously ruled to the contrary in its "post-sentence motion" opinion thereby violating the doctrine of the "law of the case"?

Commonwealth's Brief at 6–7.[3]

■ ¶ 8 For ease of analysis, we will reorganize and restate the Commonwealth's issues as follows:

1. Did the prosecutor commit misconduct by advising the jury that an acquittal sends a message that the jury tolerates semiautomatic weapons in their community?

2. Assuming that the prosecutor committed misconduct, was Poplawski prejudiced by counsel's failure to object?

3. Did the PCRA court err by ruling that Poplawski's decision not to appear before a university panel constituted an

---

**2.** The PCRA court did not order the Commonwealth to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925.

**3.** We note with disapproval that the Commonwealth's rather verbose Statement of Questions Involved violates Pa.R.A.P. 2116, which provides (*inter alia*) that the Statement

"should not ordinarily exceed 15 lines [and] must never exceed one page." This Court has the power to enforce Rule 2116 by declining to address issues which do not appear on the first page of the Statement. *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 937 n. 3 (Pa.Super.2002). We will exercise that authority.

improper reference to post-arrest silence?

4. Assuming that the evidence constituted an improper reference to post-arrest silence, was Poplawski prejudiced by counsel's actions?

Our standard of review is as follows:

> When reviewing an order [granting or] denying PCRA relief, we must determine whether the PCRA court's determination is supported by the record and is free from legal error. *Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582, 586 (Pa.1999). To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* at 587. We presume counsel is effective and place upon Appellant the burden of proving otherwise. *Commonwealth v. Howard,* 2000 PA Super 86, 749 A.2d 941, 949 (Pa.Super.2000). Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. *Id.* at 957.

*Commonwealth v. Geathers,* 2004 PA Super 111, ¶ 8, 847 A.2d 730.

■ ¶ 9 First, the Commonwealth argues that the PCRA court erred in finding that the prosecutor committed misconduct in his closing argument. In essence, the Commonwealth argues that the claim of ineffectiveness for failing to object to the prosecutor's closing statement lacks arguable merit.

> The standard for granting a new trial because of the comments of a prosecutor is a high one. Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict. This standard permits us to grant a new trial based on the comments of a prosecutor only if the unavoidable effect of the comments prevented the jury from considering the evidence. A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor.

*Commonwealth v. Ogrod,* 576 Pa. 412, 839 A.2d 294, 333–334 (2003) (citation omitted).

¶ 10 In 1997, our Supreme Court pointedly condemned closing arguments which urge the jury to "send a message" to the community with their verdict:

> [A] jury's determination must be based solely upon the evidence and not a prosecutor's emotional appeal or crusading Incitation to make a statement to the judicial system or to convince the jury that a certain verdict is necessary as a form of retribution for the ills inflicted on society by a certain class of people.
>
> . . .
>
> While this Court in the past has approved statements concerning the jury sending "messages" with their verdicts in criminal cases, such exhortations, made either by the prosecutor or the defense, in essence urge the jury to ignore their sworn duty to decide the matter only on the proper facts presented in evidence and the applicable law. Accordingly, we advise all parties in criminal matters before any court in the Commonwealth to refrain from such exhortation in the future.

*Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 203 (1997) (citations omitted).[4] Even prior to *Hall,* our Supreme Court reversed and remanded for a new penalty hearing in a death penalty case when the prosecutor's remarks turned a murder case into a "plebiscite on drugs and drug dealers and their destructive effect on society." *Commonwealth v. LaCava,* 542 Pa. 160, 666 A.2d 221, 237 (1995). The Court concluded that because the jury found two mitigating factors and only one aggravating factor, there was a reasonable likelihood that the prosecutor's remarks caused an unfair penalty determination. *Id.* The Court found that counsel was ineffective for failing to object to the prosecutor's inflammatory remarks. *Id.*

¶ 11 In the instant case, the record reflects that the prosecutor engaged in the type of argument which our Supreme Court condemned in *Hall:*

> Now look at him. He doesn't look like a murderer and he's not charged with murder, but nobody looks like a murderer. It's an action you take and you don't feel—you are not supposed to feel sympathy for his family, for his grades going down the tube. You look at the facts. This kid brought a military rifle into your community to go to school with, to settle fights with. He wants you to excuse it, to believe his story and find that that's reasonable and give him the thumbs-up by writing not guilty.
>
> Are you really willing to do that in today's day and age? A collective judicial endorsement that that is proper, bringing guns to school? Think long and hard about that.
>
> . . .
>
> Are you ready to write not guilty on that verdict slip to a man that buys a

Russian military rifle and along with his baseball glove and his blue jeans and his school books brings it into your community as a guest going to school here, goes out to nightclubs and bars and parties, looks for fights and settles them with this? Are you willing to do that?

> He says this isn't murder. That bullet came this far [indicating] from the interior compartment of that car. If I called Mrs. Iregbulem, Ike's mom, and told her everything that happened with her son and Mr. Poplawski, told her about her shooting right into her son's car, if that bullet hit him and I said it was not murder, Mrs. Iregbulem, I'm sorry for your loss, it's just a bad choice, bad decision making? This is too serious. This is your community. Guilty equals enough.

N.T., 9/2/1999, at 352, 355–356.

¶ 12 The record reflects that the prosecutor often argued his view of the facts: namely, that Appellant deliberately shot at Iregbulem's vehicle and intended to kill Iregbulem. The record also reflects that the prosecutor turned the case into a referendum on bringing guns into the community. Echoes of this argument are found in the prosecutor's opening statement:

> In a nutshell what this case is about is gun violence. It's about Mr. Poplawski as a student enrolled at Penn State and a guest in your community coming to this town with his books, his blue jeans and all the other things college kids bring with them and his decision to pack a Russian military assault rifle and bring that into this community as a student.

---

**4.** In *Hall,* the Court ultimately concluded that the prosecutor's statements did not urge the jury to send a message through its verdict.

It's about a Russian military assault rifle which has no sporting purpose in Pennsylvania. You can't hunt with these. These are designed basically to kill people. They were for the military. And it's about Mr. Poplawski using that gun for its intended purpose after threatening to do so.

*Id.* at 22. Thus, while the prosecutor did argue his theory of the case (*i.e.,* that Poplawski intended to kill and/or injure the victim), he also turned the case into a referendum on whether the community should allow outsiders to bring weapons into the community. We note that the most serious charges in the case involved the more difficult and subtle questions of Poplawski's intent when he used the weapon, not whether he brought a gun into the community and used it during a fight. In essence, the prosecutor urged the jury to "send a message" that any form of shooting to settle disputes should not be tolerated, and that acquitting Poplawski would send a contrary message. In doing so, the prosecutor "urge[d] the jury to ignore their sworn duty to decide the matter only on the proper facts presented in evidence and the applicable law." *Hall.*[5]

¶ 13 In short, the record supports the PCRA court's finding that Poplawski's claim of ineffectiveness has arguable merit.[6] Next, we agree with the PCRA court that counsel had no reasonable basis for failing to object to this line of argument. At the PCRA hearing, counsel did not articulate any basis for failing to object.

Moreover, in light of *Hall* and *LaCava,* we can see no reasonable basis for failing to object.

■ ¶ 14 The final inquiry is whether counsel's failure to object prejudiced Poplawski: *i.e.,* whether there is a "reasonable probability that the outcome of the proceedings would have been different." *Geathers.* While our Supreme Court has condemned arguments exhorting the jury to "send a message," it has not declared that such arguments create *per se* prejudice. *Compare, Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630, 634 (1991) (Biblical references by the prosecutor now constitute *per se* reversible error). Until and unless our Supreme Court announces that such arguments are *per se* prejudicial, we will adhere to the traditional test. *See, Commonwealth v. Stanley,* 830 A.2d 1021 (Pa.Super.2003) (declining to adopt *per se* reversible error standard for failure to conduct colloquy on the "no adverse inference" instruction, absent a clear indication to that effect from our Supreme Court).

¶ 15 The PCRA court found that Poplawski was prejudiced. We see no abuse of discretion or error of law in this assessment. Most importantly, we note that Judge Grine, who presided over the PCRA proceedings, also presided over Poplawski's trial. Thus, Judge Grine was in a unique position to judge the effect of the prosecutor's argument on the case. We also note that contrary to the Commonwealth's contention, the evidence against

---

**5.** We also note with disapproval that the prosecutor's cross-examination as a whole was marked by an unusually high number of argumentative, sarcastic, and irrelevant questions, loaded with unnecessary editorial commentary on the witness's answers. *E.g.,* N.T., 9/2/1999, at 198. While we recognize that trials are stressful and adversarial proceedings, we remind the prosecutor that our Code of Civility states that attorneys should "treat all participants in the legal process in a civil,

professional, and courteous manner at all times." Code of Civility, Rule II(1).

**6.** We note that the Commonwealth's brief does not mention *Hall* or *LaCava,* and does not even focus on the PCRA court's ruling that the prosecutor improperly urged the jury to send a message to the community. *See,* Commonwealth's Brief at 25–26.

Appellant was not overwhelming. Indeed, every aspect of the Commonwealth's case was vigorously contested. The Commonwealth painted a picture of Poplawski as the aggressor, continuously provoking confrontations with Iregbulem and threatening to spray Iregbulem's apartment with gunfire on the night in question. The Commonwealth presented evidence that a verbal confrontation and fistfight erupted between Poplawski and his friend Andre Cuadrado on one side, and Iregbulem and his friends on the other side. According to the Commonwealth, the fight died down after Poplawski went up into his apartment; moreover, Iregbulem and his friends were driving away when Appellant emerged from the apartment with his weapon and fired at Iregbulem's vehicle.

¶ 16 Poplawski and Cuadrado presented radically different testimony from the Commonwealth's picture. They consistently testified that Iregbulem and his friends acted as a bullying gang which escalated verbal confrontations with Poplawski and his friends, and often threatened Poplawski and his friends with bodily harm. According to the defense, on the night in question Iregbulem brought a large contingent of his friends to the parking lot in order to start a fight with Poplawski and Cuadrado, with a significant numerical advantage to Iregbulem's side. After Iregbulem and his friends attacked

Cuadrado, Poplawski escaped up to his apartment, grabbed the rifle, brought it back down to the parking lot, and fired a number of shots into the ground in order to scare off the attackers. The defense's theory was that: (1) a number of shots ricocheted off the ground and struck Iregbulem's vehicle, which was parked nearby; (2) **after the shots were fired,** Iregbulem and his friends got into their cars and drove away; and (3) Poplawski never had any intention of harming anyone. Thus, Poplawski conceded that bullets from his gun struck Iregbulem's vehicle, but he denied that anyone was in the vehicle at the time. Ballistic evidence presented at trial was not overwhelmingly in favor of the Commonwealth's theory.

¶ 17 In short, both sides presented reasonably coherent, but diametrically opposed, theories of the case. After reviewing the record, we conclude that the evidence was not so overwhelmingly in the Commonwealth's favor as to reverse the PCRA court's finding of prejudice. Accordingly, we see no abuse of discretion in the PCRA court's conclusion that there is a reasonable probability that prosecutor's exhortation to "send a message" with its verdict adversely affected the proceedings. *See, LaCava.* Accordingly, we affirm the PCRA court's order granting a new trial.[7] As a result of our

---

7. We recognize that the trial court issued a general jury instruction as follows:

> Arguments of counsel are not part of the evidence and you should not consider them as such. However, in this case you should carefully consider the light [sic] and the various reasons and arguments which each attorney has presented to you. It is the right and duty of each attorney to discuss the evidence in a manner which is most favorable to the side which they represent. You should be guided by each attorney's arguments to the extent they are supported by the evidence and insofar as they aid you in applying your own reason and common

> sense. You are not required to accept the arguments of either attorney. It is for you and you alone to decide the case based on the evidence as it was presented from the witness stand and in accordance with the instructions which you are receiving.

N.T., 9/2/1999, at 363–364. We recognize the principle that juries are presumed to follow a judge's instructions. *Ogrod.* On the other hand, this principle does not preclude Poplawski from obtaining PCRA relief. First, by ordering a new trial, the PCRA court implicitly held that the presumption had been rebutted. Again, we stress that the PCRA judge also presided over the trial, and was in the

disposition, we need not address the Commonwealth's remaining claims, or Poplawski's arguments that we should affirm the PCRA court's order on alternative bases.

¶ 18 Order affirmed.

best position to view the arguments of counsel and the evidence as a whole. Next, we note that the instruction does not expressly reject the prosecutor's exhortation to "send a message" with the verdict. Rather, the instruction simply allows the jury to credit the attorneys' arguments insofar as they comport with the evidence and with common sense. In light of our Supreme Court's holding in *Hall*, we conclude that a more direct instruction against "sending a message" should be given when the prosecution or the defense makes such an exhortation to the jury.