J-S28043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
DONALD CHARLES BURRELL :
:
Appellant : No. 1334 MDA 2021

Appeal from the PCRA Order Entered September 16, 2021
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000178-2014

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED JANUARY 19, 2023**

Appellant, Donald Charles Burrell, appeals from the order entered in the

Bradford County Court of Common Pleas, which dismissed his first petition

filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

A prior panel of this Court set forth the relevant facts and procedural

history of this appeal as follows:

> In 2013, [Appellant] was charged with sexually assaulting
> his daughter consistently over a 20-year period. He had
> previously been charged with many of the same crimes in
> 2002, but after his daughter had recanted, the
> Commonwealth *nolle prossed* the charges. The charges
> were filed again in 2013, alongside charges arising from
> conduct occurring between 2002 and 2013.
>
> In pre-trial motions, [Appellant] raised the issue of his
> competency to stand trial, whether double jeopardy barred
> the prosecution of the crimes he had been charged with in

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

2002, and whether the search warrant for his computer was overbroad. After the trial court denied all three motions, the case proceeded to a jury trial.

At trial, the victim testified that [Appellant] kept a calendar that memorialized the abuse, as well as assorted other evidence. The calendar recorded over 200 incidents of sexual intercourse between [Appellant] and his daughter. The jury found him guilty on all charges.

The trial court subsequently sentenced [Appellant] to an aggregate sentence of 1,031 to 2,546 years of imprisonment. It accomplished this sentence by running the sentences for all non-merged convictions consecutively. [Appellant] filed post-sentence motions, which the trial court denied.

*Commonwealth v. Burrell*, No. 660 MDA 2016, unpublished memorandum at 1-2 (Pa.Super. filed June 28, 2017), *appeal denied*, 644 Pa. 518, 177 A.3d 820 (2017).

This Court affirmed the judgment of sentence on June 28, 2017, and our Supreme Court denied Appellant's petition for allowance of appeal on December 27, 2017. On December 7, 2018, Appellant timely filed a *pro se* PCRA petition. The court appointed counsel ("first PCRA counsel"), and it provided sixty (60) days for the filing of an amended petition. Appellant did not file an amended petition within that period, and the court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing on July 11, 2019. Appellant filed a *pro se* response to the Rule 907 notice and claimed that first PCRA counsel had abandoned him. Consequently, the court removed first PCRA counsel on August 8, 2019. In a separate order entered that same day, the court appointed current counsel.

Following the grant of several extensions, current counsel filed an amended PCRA petition on Appellant's behalf on February 12, 2021. In it, Appellant raised various claims of trial counsel's ineffectiveness. On May 27, 2021, the Commonwealth filed an answer to the amended petition. By order and opinion entered September 16, 2021, the court denied PCRA relief.

Appellant timely filed a notice of appeal on October 15, 2021. On October 20, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on November 8, 2021.

Appellant now presents the following issues for this Court's review:

> Did the PCRA court commit an abuse of discretion and error as a matter of law by dismissing Appellant's amended PCRA without proper notice of the court's intent to dismiss the amended PCRA Petition.
>
> Did the PCRA court commit an abuse of discretion and errors as a matter of law in determining that Appellant's PCRA claims lacked merit when trial counsel did not properly make a viable Rule 600 claim, allowed inflammatory statements to be made by the district attorney during the Commonwealth's closing argument, and allowed inadmissible electronic evidence to be admitted into evidence at the time of trial without proper authentication?[2]

(Appellant's Brief at 3).

"Our standard of review of [an] order granting or denying relief under

---

[2] In his second issue, Appellant raises three (3) discrete claims of ineffectiveness. Appellant's brief provides separate argument sections for each claim. Consequently, we elect to address each claim individually.

the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Parker***, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

In his first issue, Appellant relies on Pa.R.Crim.P. 907(1) for the proposition that a PCRA court must "give notice to the defendant of its intention to dismiss the petition and provide the defendant with the reasons for the dismissal." (Appellant's Brief at 8). Appellant acknowledges that the court provided Rule 907 notice after he filed his initial, *pro se* petition, but Appellant emphasizes that he subsequently filed a counseled, amended petition. Appellant maintains that his amended PCRA petition "was substantially different in both form and substance than the initial *pro se* PCRA petition." (***Id.*** at 9). Consequently, Appellant argues that the court should have provided a second Rule 907 notice of its intention to dismiss the amended PCRA petition without conducting an evidentiary hearing. Appellant concludes that the PCRA court abused its discretion by failing to issue Rule 907 notice prior to the dismissal of the amended PCRA petition. We disagree.

Rule 907 governs the consideration of PCRA petitions as follows:

- 4 -

**Rule 907. Disposition Without Hearing**

Except as provided in Rule 909 for death penalty cases,

(1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1).

Instantly, the PCRA court did not summarily dismiss the petition upon initial review. Rather, the court: 1) appointed counsel and provided sixty days for the filing of an amended petition; 2) issued Rule 907 notice when Appellant did not file an amended petition within sixty days; 3) considered Appellant's *pro se* response to the Rule 907 notice, wherein Appellant claimed that counsel had abandoned him; 4) removed first PCRA counsel and appointed current counsel; 5) permitted Appellant to file a counseled, amended petition; and 6) permitted the Commonwealth to file an answer to the amended petition. The court's actions afforded Appellant multiple opportunities to present arguments in support of the original *pro se* petition, which is all that Rule 907 requires. *See Commonwealth v. Albrecht*, 554 Pa. 31, 63-64, 720 A.2d 693, 709-10 (1998) (analyzing Rule 1507(a), which was later renumbered Rule 907;

holding Rule 1507 was inapplicable where PCRA court did not summarily dismiss petition upon initial review, but rather ordered appointment of counsel, filing of amended petition, and briefing of legal issues presented; appellant could not demonstrate Rule 1507 violation where he was afforded further proceedings and opportunity to present arguments in support of petition). Accordingly, Appellant is not entitled to relief on his first issue.

In his second issue, Appellant complains about trial counsel's failure to object to certain prosecutorial tactics. Initially, Appellant notes that the victim "was permitted to testify that Appellant never remarried and that he never had another romantic relationship following Appellant becoming divorced from [the victim's] mother." (Appellant's Brief at 11). Appellant contends that such testimony possessed no probative value, it caused him to suffer prejudice, and trial counsel should have objected. Appellant also asserts that the district attorney improperly referred to this testimony during his closing argument.

Specifically, the district attorney mentioned that the week of trial began with Father's Day, and he used this fact as a segue to emphasize the testimony regarding Appellant's abuse of his daughter. Appellant argues that the district attorney "referenced Father's Day to unfairly evoke the jury's emotions such that the jury would disregard the evidence that was actually presented at trial." (*Id.* at 14). Appellant concludes that "[t]rial counsel's failure to object to these remarks and questions … amounted to ineffective assistance of

counsel," which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." (*Id.* at 15). We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524,

645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious

as to deprive the defendant of a fair trial, a trial whose result is reliable."

**Hopkins, supra** at 876 (quoting **Commonwealth v. Chambers**, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

The following principles inform our review of a prosecutorial misconduct claim:

> In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.
>
> Not every unwise remark on a prosecutor's part constitutes reversible error. Indeed, the test is a relatively stringent one. Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward [the defendant] so that they could not weigh the evidence objectively and render a true verdict. Prosecutorial misconduct, however, will not be found where comments … were only oratorical flair. In order to evaluate whether comments were improper, we must look to the context in which they were made.

**Commonwealth v. Harris**, 884 A.2d 920, 927 (Pa.Super. 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007). "A prosecutor has great discretion during closing argument. Indeed, closing 'argument' is just that: argument." **Commonwealth v. Brown**, 911 A.2d 576, 580 (Pa.Super. 2006), *appeal denied*, 591 Pa. 722, 920 A.2d 830 (2007).

Instantly, the prosecutor questioned the victim as follows:

> [PROSECUTOR:]    Okay. When you were young, five and six years old, did you enjoy time with your father?
>
> [WITNESS:]        Yes.

> [PROSECUTOR:]     The, uh, … did your father ever remarry?
>
> [WITNESS:]          No.
>
> [PROSECUTOR:]     Did he ever have another relationship as far as you know?
>
> [WITNESS:]          No.

(N.T. Trial, 6/23/15 (afternoon session), at 4-5). Contrary to Appellant's assertions, we do not agree that this testimony lacked probative value. In a case involving allegations of sexual abuse over the course of decades, Appellant's decision not to remarry tended to explain why the abuse went on for so long. *See Commonwealth v. Hairston*, 624 Pa. 143, 166, 84 A.3d 657, 670 (2014), *cert. denied*, 574 U.S. 863, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014) (reiterating that evidence of motive is admissible); *Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (explaining evidence is relevant if it logically tends to establish material fact, tends to make fact at issue more or less probable, or tends to support reasonable inference or proposition regarding material fact).

Later, the prosecutor referenced this testimony during his closing argument:

> Believe it or not this week began with Father's Day, didn't it. Yet, we spent an entire week dealing with one of the most pathetic fathers you could ever see; and by pathetic I mean to be pitied. This is the most selfish person one would ever run into…. He has no other woman in his life, his daughter is his place for sex but more important than for sex, it's for sex that he can control, sex that he can dominate, sex that he can humiliate.

- 10 -

*     *     *

> We talked about the [text and instant] messages [exchanged between Appellant and the victim] and what they said. The message, there is only one, one thing and one thing only. You have to be my bitch slave 24/7. Is that the way somebody talks to his daughter in a normal situation? I tend to doubt it. Is it the way somebody that's in a dominant position over another person might talk? Yes, if they can get away with it. That's another thing about this case isn't it, hard for a guy like [Appellant] to find another woman that he can do to what he can do to this woman who's tied to him by family love, tied to him by a lifelong attachment, tied to him by the fact that she doesn't have much else….

(N.T. Trial 6/25/15 (afternoon session), at 25-26, 37).

The PCRA court reviewed this portion of the prosecutor's closing argument and concluded that the comments at issue "cannot be said to have been of such a character as to inflame the passions of the jury or to have seriously [misled] or distracted the jurors." (PCRA Court Opinion, filed 9/16/21, at 8). We cannot say that the PCRA court erred in reaching this conclusion. The prosecutor's remark about Father's Day amounts to mere oratorical flair. **See Harris, supra**. The prosecutor's remark about the lack of other women in Appellant's life was a permissible comment about the evidence of record. **See Commonwealth v. Burno**, 626 Pa. 30, 60, 94 A.3d 956, 974 (2014), *cert. denied*, 574 U.S. 1193, 135 S.Ct. 1493, 191 L.Ed.2d 435 (2015) (providing prosecutor may make fair comment on admitted evidence). Based upon the foregoing, there is no arguable merit to Appellant's claim that trial counsel was ineffective for failing to object to the prosecutor's

tactics. ***See Smith, supra***; ***Poplawski, supra***. Therefore, Appellant is not entitled to relief on his second issue.

In his third issue, Appellant reiterates that the Commonwealth initially brought criminal charges against him in 2002, but those charges were withdrawn due to the victim's recantation. Although the Commonwealth refiled many of the same charges approximately ten years later, Appellant complains that "[t]here is no indication that the Commonwealth acted with due diligence to investigate the claims of [the victim] that Appellant sexually abused her for nearly ten (10) years until Appellant was charged in the matter[.]" (Appellant's Brief at 16). Appellant maintains that trial counsel should have challenged the refiling of the charges via a Pa.R.Crim.P. 600 motion. Had counsel filed such a motion, Appellant argues that the court would have conducted a hearing "where Appellant would have been granted the opportunity to build a record that the Commonwealth had not acted with due diligence in investigating [the victim's] claims and charging Appellant with any criminal charges stemming from that investigation."[3] (***Id.***) Moreover, under the circumstances of this case, Appellant asserts "that the Rule 600 run date should have begun to run when Appellant was initially charged." (***Id.*** at

---

[3] Appellant acknowledges that trial counsel challenged the refiling of the charges in a pretrial motion alleging that prosecution was barred by the doctrine of collateral estoppel. Appellant insists, however, that Rule 600 presented a distinct, meritorious theory of relief, which counsel had no reasonable basis for failing to pursue.

17). Appellant concludes that trial counsel was ineffective for failing to file a Rule 600 motion, and counsel's error constituted a gross miscarriage of justice. We disagree.

The following principles apply to our review of a speedy trial claim:

> [T]his Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Martz*, 232 A.3d 801, 809-10 (Pa.Super. 2020) (quoting *Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa.Super. 2011)).

Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600.  Prompt Trial**

**(A)  Commencement of Trial; Time for Trial**

\* \* \*

- 13 -

(2)    Trial shall commence within the following time periods.

(a)    Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*    \*    \*

**(C)    Computation of Time**

(1)    For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation.

\*    \*    \*

In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600.  *See Commonwealth v. Meadius*, 582 Pa. 174, 870 A.2d 802 (2005).

Pa.R.Crim.P. 600(A)(2)(a), (C)(1), and *Comment*.

Due diligence is a fact-specific concept that must be determined on a case-by-case basis.  Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth.  Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600.  Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must

commence.

**Martz, supra** at 810-11 (quoting **Commonwealth v. Moore**, 214 A.3d 244, 248-49 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 224 A.3d 360 (2020)) (internal citations and quotation marks omitted).

Instantly, the 2014 affidavit of probable cause provides insight into law enforcement's multi-year investigations into Appellant's criminal conduct. The affiant, Detective Al Ogden, explained that his investigation revealed that Appellant began his sexual abuse of the victim in 1991, and it continued until 2002. The Commonwealth first charged Appellant in October 2002. After his arrest, however, Appellant "got to" the victim, and she recanted her abuse allegations. (Affidavit of Probable Cause, dated 1/17/14, at 2). The affidavit noted that Appellant employed several methods to control the victim and prevent her from disclosing the abuse:

> [Appellant] has used [the victim's] religious beliefs against her, he has threatened to make public sexually explicit videos of the victim, pain and compliance methods such as a stun gun, clothes pins on her nipples or striking her with an electrical cord, as well as threatening physical harm to her, her siblings and eventually her boyfriend.

(**Id.** at 1).

After the dismissal of the 2002 charges, Appellant resumed his sexual abuse of the victim. The second round of abuse commenced in 2005 and continued until March 2012, when the victim "finally was able to stand up to [Appellant] and end it." (**Id.** at 2). The victim, however, did not immediately come forward to report Appellant to law enforcement. Rather, on July 22,

2013, Detective Ogden was interviewing the victim "regarding a different investigation[.]" (*Id.* at 1). At that time, Detective Ogden brought up the victim's prior allegations of abuse. The victim "stated that the original reported abuse did in fact occur and that the abuse began again in 2005 and continued until 2012." (*Id.*) The victim also agreed to submit to further interviews. On July 23, 2013, the victim participated in a forensic interview where she "recounted years of sexual, emotional, and psychological abuse at the hands of [Appellant]." (*Id.*) Thereafter, Detective Ogden obtained a warrant to search Appellant's residence. Upon executing the warrant, the detective recovered several pieces of evidence that corroborated the victim's allegations.

The PCRA court evaluated this record and determined that there was no arguable merit to Appellant's claim regarding the failure to file a Rule 600 motion:

> [Appellant's amended PCRA petition] asserts that it is believed and therefore averred that the Commonwealth never took any steps whatsoever to investigate [the victim's] claims of sexual abuse allegedly committed by [Appellant]. [Appellant] does not elaborate or set forth any facts as to what the Commonwealth failed to do. [Appellant] does admit that the charges were *nolle prossed* in 2004 due to victim's recantation. This would be beyond the Commonwealth's control. [Appellant] offers no allegations to support a claim that the Commonwealth attempted to circumvent the limitations of Rule 600. Therefore, the run date is calculated from the second filing. This claim is without merit.

(PCRA Court Opinion at 2-3) (internal quotation marks omitted).

- 16 -

Here, the record confirms the court's conclusions. The victim recanted her abuse allegations shortly after the charges were filed in 2002, and she did not "stand up" to Appellant to break the cycle of abuse until 2012. When the victim happened to cross paths with Detective Ogden as part of an unrelated investigation in 2013, the detective did not pass up the opportunity to revisit the victim's prior allegations of abuse. At that point, the victim was finally ready to advance her allegations, which resulted in the refiling of charges in 2014. Under these circumstances, the victim's recantation was beyond the Commonwealth's control, and it occurred despite the exercise of due diligence. *See Martz, supra*; Pa.R.Crim.P. 600 *Comment*. Thus, the PCRA court did not err in concluding that there was no arguable merit to Appellant's claim regarding the need for a Rule 600 motion. *See Smith, supra*; *Poplawski, supra*. As such, Appellant is not entitled to relief on his third issue.

Finally, Appellant raises related claims concerning evidence that the police seized from his residence. Appellant notes that police obtained a search warrant for his residence and subsequently seized a computer and cell phone. Appellant contends that "the evidence garnered from these electronic devices was extensively cited [at trial] to show that Appellant was guilty of the crimes charged in this matter." (Appellant's Brief at 19). Appellant cites a portion of the warrant, which permitted police to search for instant messages relating to the abuse of the victim, as well as any other files depicting child pornography. Appellant insists, however, that the warrant did not expressly authorize the

seizure of a computer and cell phone, and trial counsel was ineffective for failing to challenge the seizure of these items on this basis.

Appellant asserts that the digital evidence recovered from the computer and cell phone included instant messages, emails, and text messages. Although the victim repeatedly testified that she exchanged the communications at issue with Appellant, Appellant argues that the Commonwealth did not provide "any more information as to how [the victim] knew that Appellant had been the person who sent the messages." (*Id.* at 22). Appellant emphasizes:

> [T]he evidence was never properly authenticated in that the only evidence that was submitted to show that the messages were sent by Appellant was the messages came from devices that were purportedly Appellant's and that the names and screennames in the devices and applications used to send the messages were purportedly names that reflected that Appellant had sent the messages.

(*Id.* at 27). Absent proper authentication, Appellant contends that trial counsel was ineffective for failing to object to the admission of the digital evidence. We disagree with Appellant's conclusions related to the procurement and presentation of the digital evidence.

The following principles apply to our review of claims involving search warrants:

> Article I, Section 8 of the Pennsylvania Constitution ensures that citizens of this Commonwealth are protected from unreasonable searches and seizures by requiring that warrants: (1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide

evidence of a crime. Regarding the former requirement, we have interpreted the phrase "as nearly as may be" in Article I, Section 8 as requiring more specificity in the description of items to be seized than the federal particularity requirement. This more stringent requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another.

***Commonwealth v. Johnson***, ___ Pa. ___, ___, 240 A.3d 575, 584 (2020)

(internal citations, footnote, and some quotation marks omitted).

However, search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice. It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search. For example, police could seize a kitchen knife during a warranted search for "one pocket knife."

***Commonwealth v. Moser***, 283 A.3d 850, 857 (Pa.Super. 2022) (internal

citations and some quotation marks omitted).

Additionally, Pennsylvania Rule of Evidence 901 governs the authentication of evidence as follows:

**Rule 901. Authenticating or Identifying Evidence**

**(a) In General.** Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

**(b) Examples.** The following are examples only—not a complete list—of evidence that satisfies the requirement:

(1) *Testimony of a Witness with Knowledge.* Testimony that an item is what it is claimed to be.

- 19 -

* * *

> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Pa.R.E. 901(a), (b)(1), (4).[4]

"[E]-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally."

**Commonwealth v. Koch**, 39 A.3d 996, 1104 (Pa.Super. 2011), *affirmed*,

---

[4] After Appellant's judgment of sentence became final, on May 20, 2020, the Pennsylvania Supreme Court announced the amendment of Rule 901(b) to include the following language:

> (11) *Digital Evidence.* To connect digital evidence with a person or entity:
>
> > (A) direct evidence such as testimony of a person with personal knowledge; or
> >
> > (B) circumstantial evidence such as:
> >
> > > (i) identifying content; or
> > >
> > > (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

**In Re: Order Approving the Amendment of Pa. Rule of Evid. 901**, No. 841, Supreme Court Rules Docket (Pa. May 20, 2020) (effective Oct. 1, 2020) (*per curiam*). The amended comment explains that "Digital evidence" includes emails, and: "The proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." **Id.**

630 Pa. 374, 106 A.3d 705 (2014).  ***See also Danzey, supra*** at 337-38

(explaining Pennsylvania appellate courts have also considered authentication

of computerized instant messages and communications made on social media

platforms).

> A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting.  A document also may be authenticated by circumstantial evidence, a practice which is uniformly recognized as permissible.
>
> *       *       *
>
> [T]he difficulty that frequently arises in e-mail and text message cases is establishing authorship.  Often more than one person uses an e-mail address and accounts can be accessed without permission.  In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.

***Koch, supra*** at 1004 (internal citations and quotation marks omitted).

Instantly, Appellant concedes that law enforcement obtained a search

warrant to seize

> [i]nstant messages relating to the sexual abuse of [the victim], … video files, still image files, documents and other files relating to the sexual abuse of [the victim].  Video files, still image files and any other file depicting [c]hild [p]ornography….

(Appellant's Brief at 20) (quoting Application for Search Warrant and

Authorization, dated 8/7/13).  Although this portion of the application did not

- 21 -

expressly mention the computer and cell phone, the warrant effectively permitted law enforcement to seize the electronic devices where the relevant data files might reside. Any other interpretation of the language at issue would constitute a hyper technical interpretation that would have frustrated law enforcement's ability to seize the relevant computer files. *See Moser, supra*. Moreover, the computer and cell phone were reasonably related to a search for instant messages and computer files. *Id.* Consequently, the portion of the application at issue adequately described the items to be seized. *See Johnson, supra*.

Regarding the authentication of the digital evidence at trial, the Commonwealth provided ample circumstantial evidence to establish that Appellant sent the messages at issue. Specifically, Detective Ogden testified regarding the recovery of the evidence from Appellant's residence and the subsequent delivery of the evidence to the state police computer lab for further examination. (*See* N.T. Trial, 6/23/15 (morning session), at 67-70). The Commonwealth also presented testimony from Russell Houseknecht, the computer crimes analyst who extracted the relevant files from Appellant's devices. (*Id.* at 53-56).

Thereafter, the victim testified that she communicated with Appellant using text messages on her cell phone and instant messages on her computer. (*See* N.T. Trial, 6/23/15 (afternoon session), at 55). When utilizing instant messages, the victim used the screen name "Moochiesmom80" or

"Pineberry68." (*Id.* at 94-95). Appellant used the screen name "Moparrunner74." (*Id.* at 95). The victim "created that [screen] name for [Appellant] when [she] set up his e-mail." (*Id.*) Thereafter, the Commonwealth introduced voluminous transcripts of messages and emails exchanged between these accounts.[5]

In addition to the victim's familiarity with Appellant's various accounts and devices, her testimony demonstrated that Appellant took a domineering, authoritarian tone when communicating with her. Appellant would tell the victim that she "was to do what [she] was told, not to ever say no or question what [Appellant] wanted, to never hesitate to just do it or [she] would be punished for it." (*Id.* at 8). For example, the victim testified that Appellant forced her to write and sign an agreement pledging total obedience to Appellant:

> [PROSECUTOR:] Okay. The—all right, what's [Commonwealth's exhibit] number 14?
>
> [WITNESS:] An agreement giving my total obedience to the holder of this paper.
>
> [PROSECUTOR:] Does—did you write that?
>
> [WITNESS:] Yes.
>
> [PROSECUTOR:] Did you sign it?

---

[5] Some of the messages appear as a dialogue between "Moparrunner74" and "Big Titted Bitch." (*See* Commonwealth's Trial Exhibit 44; R.R. at 737a). The victim explained that "Big Titted Bitch" was the name linked to the victim's phone number in the contact list of Appellant's cell phone. (*See* N.T. Trial, 6/23/15 (afternoon session), at 96).

[WITNESS:]          Yes.

[PROSECUTOR:]       Did you compose it?

[WITNESS:]          No.

[PROSECUTOR:]       How did you get the words for it?

[WITNESS:]          My father.

[PROSECUTOR:]       When did he give it to you?

[WITNESS:]          Sometime before it was written.

[PROSECUTOR:]       Did you want to do that?

[WITNESS:]          No.

[PROSECUTOR:]       Why did you do it?

[WITNESS:]          Because I was told to.

[PROSECUTOR:]       You said on that—that letter is generally just a promise of obedience?

[WITNESS:]          Yes.

[PROSECUTOR:]       Can you read it to us?

[WITNESS:]          It says, "I, [C.B.], give the holder of this paper my complete and total obedience.  I shall do whatever I am told with no exceptions, trouble, or objections of any type."

(*Id.* at 60-61).  In addition to this obedience pledge, the Commonwealth offered similar "agreements" wherein Appellant forced the victim to give him "ownership" over her hair, breasts, and various nude photos of her.

Significantly, the same themes that appear in these written agreements—Appellant's need for dominance over the victim and his desire

for her unquestioned fealty—appear throughout the text and instant message transcripts offered by the Commonwealth. Therefore, sufficient circumstantial evidence demonstrated that the Commonwealth properly authenticated the text and instant messages where: 1) the victim's testimony revealed that the tone of the digital messages matched the tone Appellant used for other forms of communication with her; 2) the victim's testimony linked Appellant to the screen names and accounts at issue; and 3) police connected the digital messages to the devices seized from Appellant's residence. **Compare Koch, supra** at 1005 (emphasizing detective's testimony regarding his transcription of text messages from defendant's cell phone was insufficient to authenticate defendant as author; Commonwealth did not present testimony from persons who received messages, and messages did not include context clues tending to reveal sender's identity). Under these circumstances, there is no arguable merit to Appellant's claims of ineffectiveness for failing to object to the procurement and presentation of the digital evidence. **See Smith, supra**; **Poplawski, supra**. Appellant is not entitled to relief on his final claim, and we affirm the order dismissing Appellant's PCRA petition.

Order affirmed.[6]

---

[6] On August 25, 2022, Appellant filed a *pro se* "motion for appointment of new counsel due to ineffectiveness" in this Court. In his motion, Appellant essentially claims that current counsel is ineffective for failing to raise an additional issue on appeal. Specifically, Appellant claims that current counsel should have argued that "trial counsel was ineffective for not objecting to the

*(Footnote Continued Next Page)*

charges being refiled after the Commonwealth *nolle prossed* them in 2004." (Motion, filed 8/25/22, at Exhibit A).

On December 1, 2022, Appellant filed a *pro se* "amended motion for appointment of new counsel due to ineffectiveness." In it, Appellant raises an additional claim of ineffectiveness, arguing that current counsel failed "to clear up the confusion as to how and when the computer in Appellant's case was seized." (Motion, filed 12/1/22, at 1).

In disposing of these motions, we recognize our Supreme Court's recent decision in **Commonwealth v. Bradley**, ___ Pa. ___, ___, 261 A.3d 381, 401 (2021), holding "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." Assuming without deciding that **Bradley** permits Appellant to raise a *pro se* challenge to PCRA counsel's effectiveness after the filing of an appellate brief while the appeal remains pending, we conclude that Appellant is not entitled to relief on his current claims. Significantly, the *pro se* motions filed in this Court focus on the arguable merit prong of the test for ineffectiveness while providing little-to-no analysis of the rational basis and prejudice prongs. Thus, the failure of the *pro se* motions to develop a meaningful argument for all three parts of the test for ineffectiveness is fatal to Appellant's request for relief. **See Sandusky, supra** at 1044 (stating that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy petitioner's burden to prove that counsel was ineffective). Accordingly, we deny Appellant's *pro se* motions for appointment of new counsel.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/19/2023