J-S40039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JANICE LIND | : | |
| | : | |
| Appellant | : | No. 927 EDA 2022 |

Appeal from the PCRA Order Entered March 17, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006458-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JANICE LIND | : | |
| | : | |
| Appellant | : | No. 928 EDA 2022 |

Appeal from the PCRA Order Entered March 17, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006459-2017

BEFORE:  PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 5, 2023**

Appellant, Janice Lind, appeals from the order entered in the Philadelphia County Court of Common Pleas, which dismissed her first petition filed under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546.  We vacate and remand for further proceedings.

The PCRA court set forth the relevant facts of this appeal as follows:

Appellant had been charged with the systematic sexual abuse of two of her minor biological children, her only son and eldest of three daughters, committed in concert and independently with her husband, the children's biological father. Charges [were] not brought against Appellant for the sexual abuse of her two younger daughters who had also been reported as similarly abused per their siblings. The biological father of the children who had also participated in the sexual abuse, however, had died before the authorities learned of the crimes. The abuse of these children had occurred between 2011 and 2013, inside the home where Appellant and the father had resided together with their minor children, who had ranged under eight years to approximately eighteen months…. All children had been removed from this residence by the City of Philadelphia Department of Human Services due to [uninhabitable] conditions in the home and reported narcotics abuse of both parents before any information was [conveyed] concerning sexual and physical abuse.

The eldest daughter, who was 12 years old when she testified at trial, had reported being repeatedly sexually abused by both of her parents, particularly when she was six or seven years old. She stated in summary that she and her brother were often abused in Appellant's bedroom. Appellant had played pornographic movies on the television. Appellant directed the eldest daughter and son to mimic the sexual acts portrayed on the television. She had directed them to touch each other's private parts. This child recalled that Appellant had touched her front private parts and put "burning powder" on her front private parts. She testified that her father had touched her private parts in concert with Appellant. Appellant had put the father's private part into her eldest daughter's private part. She testified that Appellant had been laughing while the sexual activity was occurring.

The son was 10 years old when he testified. He recalled frequent instances when Appellant had ordered all four children to enter her bedroom when his father was in the bedroom only to be subjected to myriad forms of abuse. He reported that Appellant had touched his front and rear private parts. The father inserted his front private part into the son's back private part. He said that Appellant had

- 2 -

watched this activity. The son said that Appellant had touched and performed sexual acts on all three of his sisters including a time when the youngest was just a baby. As to the second oldest sister, he said that Appellant had touched her back part while the father touched her front part. He recalled that his father had put his private part into the eldest daughter's private part.

\* \* \*

Christopher Li, social worker for the Department of Human Services, testified that as the initial intake responder, he had conducted minimal fact interviews with the son and the eldest daughter. The interviews were "minimal" so as not to re-traumatize the children. The son reported to him [and] said that he remembered being brought into his parents' bedroom, forced to watch pornographic movies, forced to perform oral sex on his father and forced to engage in sexual activities with his parents and sisters who at that time ranged in ages from six or seven to less than two years old. The eldest daughter also said that she had to do "stuff" with her parents and siblings. Mr. Li then referred the case to the Philadelphia Children's Alliance, an agency tasked with interviewing children who suffered sexual abuse.

Michelle Kline, a forensic interview specialist with the Philadelphia Children's Alliance, testified that she interviewed the four children separately. Videotapes of the interviews were shown to the jury. The videotape recordings depicted each of the two named victims credible separate reporting of long-term penetrating sexual abuse committed by both of their biological parents in response to non-confrontational and nonsuggestive questions posed by the Child Alliance forensic interview specialist.

It was stipulated at trial that when the third oldest child had been interviewed by the Department of Human Services, she did not disclose sexual abuse. It was also stipulated that Appellant was born [in] December … 1975. The respective dates of birth of each of Appellant's four biological children including the listed victims were entered by way of stipulation as well. Appellant's brother, John Lind, testified that Appellant had a reputation as being a peaceful and nonviolent citizen.

> Appellant testified, without any presented emotional affect, at trial that her four biological children had never even entered the bedroom that she had shared with her now deceased husband who was each child's biological father. She calmly denied playing any pornographic videos. She denied sexually abusing her son and eldest daughter. She denied witnessing any sexual abuse from the children's father. She claimed to have no idea why the children had accused her. She had also claimed that her home had been quite suitable for habitation for her family that had also included her disabled mother.

(PCRA Court Opinion, filed 7/13/22, at 1-4) (quoting Trial Court Opinion, filed 1/10/19, at 2-7) (internal record citations omitted).

Following trial, a jury found Appellant guilty of multiple offenses at two different docket numbers.[1] On May 18, 2018, the court imposed an aggregate sentence of forty-four (44) to eighty-eight (88) years' imprisonment. This Court affirmed the judgment of sentence on August 1, 2019, and our Supreme Court denied Appellant's petitions for allowance of appeal on February 4, 2020. *See Commonwealth v. Lind*, 221 A.3d 233 (Pa.Super. 2019), *appeals denied*, 657 Pa. 92, 224 A.3d 364 (2020) and 657 Pa. 96, 224 A.3d 365 (2020).

On December 11, 2020, Appellant timely filed a *pro se* PCRA petition listing both underlying docket numbers. In it, Appellant raised bald assertions

---

[1] The Commonwealth charged Appellant with crimes against her son at CP-51-CR-0006458-2017. The Commonwealth charged Appellant with crimes against her daughter at CP-51-CR-0006459-2017. The cases were consolidated for trial.

of 1) actual innocence; 2) unfair trial; and 3) ineffective assistance of all prior counsel.  The court appointed counsel ("first PCRA counsel"), who filed a "no-merit" letter on June 11, 2021.  First PCRA counsel concluded that Appellant was not entitled to relief based upon any of her bald assertions of error.  Further, first PCRA counsel opined that Appellant possessed "no valid claims for relief" under the PCRA.  (No-Merit Letter, filed 6/11/21, at 3) (unnumbered).

On August 24, 2021, the court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's PCRA petition without a hearing.  Appellant did not respond to the Rule 907 notice, and the court dismissed the PCRA petition on September 30, 2021.  In the docket entry memorializing the dismissal order, the court also noted that first PCRA counsel would continue to represent Appellant during the appeal period.  Despite this directive, first PCRA counsel filed a motion to withdraw on October 1, 2021.

The court permitted first PCRA counsel to withdraw on November 18, 2021.  That same day, the court observed that first PCRA counsel had failed to file a timely notice of appeal on Appellant's behalf.  Consequently, the court appointed current counsel, and it directed first PCRA counsel to pass information about the case to current counsel.  Thereafter, current counsel filed identical petitions seeking reinstatement of Appellant's right to appeal

from the September 30, 2021 order *nunc pro tunc*.[2] The court granted Appellant's petitions on January 12, 2022. Further, the court vacated its prior order denying PCRA relief "to permit current … counsel additional time and opportunity to independently review the trial record." (Order, filed 1/12/22, at 1).

Following a status hearing, the court entered a new order denying PCRA relief on March 17, 2022. Appellant timely filed separate notices of appeal at each underlying docket number on March 31, 2022. On April 11, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed her Rule 1925(b) statement on April 14, 2022. On May 11, 2022, this Court consolidated the appeals *sua sponte*.

Appellant now raises the following issues for this Court's review:

> Whether the [PCRA] court erred in denying [Appellant's] petition for … collateral relief pursuant to the [PCRA] without affording her an evidentiary hearing since [Appellant's] conviction and sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place?
>
> Whether the [PCRA] court erred in denying [Appellant's] petition for … collateral relief pursuant to the [PCRA] without affording her an evidentiary hearing since, under the totality

---

[2] Specifically, current counsel filed the petition at CP-51-CR-0006459-2017 on November 22, 2021. Current counsel filed the petition at CP-51-CR-0006458-2017 on December 2, 2021. Although the petitions are identical, it is unclear why counsel filed the petitions on different dates.

of circumstances, there are genuine issues concerning material facts and legitimate purposes would be served by such hearing?

Whether the [PCRA] court erred in denying [Appellant's] petition for … collateral relief pursuant to the [PCRA] without affording her an evidentiary hearing since [Appellant's] petition makes out a *prima facie* case warranting such hearing where under the totality of circumstances, trial counsel provided ineffective assistance that lacked any reasonable basis which prejudiced [Appellant]?

(Appellant's Brief at 6-7).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Parker**, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

Appellant's issues are related, and we address them together. Appellant argues that the Commonwealth presented trial testimony from Michelle Kline, the Philadelphia Children's Alliance employee who conducted forensic interviews with the victims. Appellant complains that the Commonwealth did not offer Ms. Kline as an expert in any field; rather, she testified as a lay person. Among other things, Appellant insists that Ms. Kline's testimony was

inadmissible because: 1) she offered an expert opinion; 2) she provided improper testimony about the children's demeanor and behavior; and 3) she offered expert testimony on the concept of "gradual disclosure" of abuse.[3] Even if the court accepted Ms. Kline as an expert, Appellant maintains her testimony would still have been inadmissible; "given her background in social work, she cannot testify why a sexual assault victim may or may not react in a particular manner because [she is] not an expert in Rape Trauma Syndrome." (Appellant's Brief at 26).

Appellant cites 42 Pa.C.S.A. § 5920 for the proposition that a party must present an expert to "testify to facts and opinions regarding specific types of victim responses and victim behaviors." (*Id.* at 27) (quoting 42 Pa.C.S.A. § 5920(b)(2)). Appellant emphasizes that Ms. Kline "is no expert in the behavior of sexual assault victims given her qualifications; her sole responsibility as a forensic examiner is to listen to what children have to say in their own words." (*Id.* at 29). Appellant claims that trial counsel had no reasonable basis for failing to object to Ms. Kline's testimony "given the prejudice it creates in

_____

[3] Appellant also argues that Ms. Kline testified about a report that she did not prepare. We observe, however, that the prosecutor presented Ms. Kline with exhibit C-5, which was the interview reports Ms. Kline prepared for each of the victims. The prosecutor asked Ms. Kline, "Did you create those or does somebody else create those?" (N.T. Trial, 2/28/18, at 50). Ms. Kline responded, "I didn't create the actual document, but I put the information into the document." (*Id.*) When viewed in context, Ms. Kline's testimony reveals that she completed reports about the interviews by inputting information into an already-existing document. Thus, the record belies Appellant's assertion that Ms. Kline improperly testified about the reports.

explaining … away the delay in reporting this alleged crime." (**Id.**) Further, Appellant argues that trial counsel's failure to object caused Appellant to suffer prejudice. Appellant concludes that the PCRA court should have conducted an evidentiary hearing to evaluate this claim further. We agree that an evidentiary hearing is necessary, albeit for slightly different reasons than those advanced by Appellant.

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

**Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis

for the assertion of ineffectiveness is of arguable merit[.]" ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting ***Commonwealth v. Geathers***, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." ***Commonwealth v. Kelley***, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting ***Pierce, supra*** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the

proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." ***Hopkins, supra*** at 876 (quoting ***Commonwealth v. Chambers***, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

In this case, current counsel is Appellant's third attorney.[4] Therefore, Appellant must now present a "layered" claim of ineffective assistance, referring to both trial counsel and first PCRA counsel's ineffectiveness.

> [W]here, such as here, a petitioner must "layer" claims of ineffective assistance of counsel, [she] "must plead in [her] PCRA petition that [her] prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action." The petitioner must further "present argument, in briefs or other court memoranda, on the three prongs of the [the ineffectiveness] test as to each relevant layer of representation."

***Commonwealth v. Montalvo***, 651 Pa. 359, 379-80, 205 A.3d 274, 286 (2019) (quoting ***Commonwealth v. McGill***, 574 Pa. 574, 589, 832 A.2d 1014, 1023 (2003)).

> As a corollary to the layered pleading rule adopted in ***McGill***, it is necessary that a PCRA petitioner have the ability to amend [her] petition in order to properly plead, and attempt to prove, layered claims where dismissal of the petition is

---

[4] Trial counsel represented Appellant at trial and throughout the remainder of the direct appeal process. Thereafter, first PCRA counsel and current counsel represented Appellant during collateral review.

> imminent on grounds that such claims were not adequately pled. Indeed, our cases have recognized as much. Furthermore, the ability to amend, in turn, flows from the guarantee embodied in our Rules of Criminal Procedure that a PCRA court will give a petitioner adequate notice of its intention to dismiss [the] petition and the attendant reasons therefor. In cases where a petitioner has not been afforded the opportunity to amend [her] layered pleadings, a remand from this Court is appropriate unless a petitioner has not satisfied [her pleading] burden in relation to the underlying claim.

*Commonwealth v. Carson*, 590 Pa. 501, 525-26, 913 A.2d 220, 233-34 (2006), *cert. denied*, 552 U.S. 954, 128 S.Ct. 384, 169 L.Ed.2d 270 (2007) (internal citations and quotation marks omitted). *See also Commonwealth v. Tedford*, 598 Pa. 639, 661, 960 A.2d 1, 13 (2008) (stating remand is not necessary where petitioner has not carried ineffectiveness pleading burden in relation to underlying claim of trial counsel's ineffectiveness; even if petitioner were able to craft perfectly layered argument in support of claim with respect to subsequent counsel, petitioner's claim would not warrant relief).

Related to the subject of remand, "[i]t is not an appellate court's function to engage in fact-finding." *Commonwealth v. Shaw*, ___ Pa. ___, ___, 247 A.3d 1008, 1017 (2021) (quoting *BouSamra v. Excela Health*, 653 Pa. 365, 386-87, 210 A.3d 967, 979-80 (2019)). The PCRA court is "the appropriate—and, indeed, the only—forum for the evidentiary and factual development" of PCRA claims. *Id.* (quoting *Commonwealth Koehler*, 658 Pa. 658, 695, 229 A.3d 915, 937 (2020)). Recently, in *Commonwealth v. Bradley*, ___ Pa. ___, 261 A.3d 381 (2021), our Supreme Court

acknowledged that remand might be proper in certain cases where ineffectiveness claims are raised on appeal in the first instance:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness …; however, where there are material facts at issue concerning [claims challenging counsel's stewardship] and relief is not plainly unavailable as a matter of law, the remand should be afforded[.]

**Bradley, supra** at ___, 261 A.3d at 402 (internal citations, footnote, and quotation marks omitted).

Additionally, Section 5920 governs expert testimony regarding victims' responses to sexual violence:

> **§ 5920. Expert testimony in certain criminal proceedings**
>
> \* \* \*
>
> **(b) Qualifications and use of experts.—**
>
> (1) In a criminal proceeding subject to this section,[5] a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to

---

[5] Section 5920 applied to the criminal proceedings for Appellant's underlying offenses, which included unlawful contact with a minor and conspiracy to commit rape of a child. **See** 42 Pa.C.S.A. § 5920(a)(2).

sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

(2)    If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

42 Pa.C.S.A. § 5920(b)(1), (2).

Instantly, Appellant's brief on appeal presents arguments that are limited to an examination of trial counsel's ineffectiveness. **See Montalvo, supra**. We will examine these arguments to determine whether Appellant satisfied her pleading burden in relation to the underlying claim such that remand might be appropriate. **See Tedford, supra**; **Carson, supra**. Appellant emphasizes the following testimony from Ms. Kline regarding the concept of gradual disclosure:

> [PROSECUTOR:]    Okay.  I wanted to ask you, based on your training and experience, can you describe the concept of gradual disclosure?
>
> [WITNESS:]        Sure.  So the gradual, so we call it the gradual nature of the disclosure process.  So kids don't typically give all of the information about what might have happened to them all at one time.  They don't kind of just send out all of the information to someone who asks them what might have happened.  Kids might give a little bit of detail about what happened, wait to see how someone responds.  They might wait to see how a caregiver responds or what they say or do or what might happen to them after they disclose that little bit of information, and then over time they might disclose more.
>
> Another aspect of that is that kids might disclose different

- 14 -

> information depending on who they're talking to. They might say some information to a caregiver. They might give more or less information to someone else that they might not know. So that might change over time as well.

(N.T. Trial, 2/28/18, at 50-51).

Ms. Kline's testimony makes clear that the concept of gradual disclosure is a type of victim response or behavior. In evaluating Ms. Kline's testimony under Section 5920, we emphasize that a witness may testify to facts regarding specific types of victim responses and behaviors "**if** qualified as an expert." **See** 42 Pa.C.S.A. § 5920(b)(2) (emphasis added). Because the Commonwealth did not ask the court to qualify Ms. Kline as an expert, there appears to be arguable merit to Appellant's claim that Ms. Kline provided some improper testimony.[6] **See Smith, supra**.

As for the remaining prongs of the test for ineffectiveness, the record is silent as to any reasonable strategic basis for trial counsel's inaction. Further, the PCRA court did not have the opportunity to assess prejudice in the first instance. **See Shaw, supra** at ____, 247 A.3d at 1017 (holding petitioner did

---

[6] This interpretation of the statute is supported by recent case law from this Court, which determined that a forensic interviewer's opinion testimony on the tendency of child victims to under-disclose incidents of sexual abuse "by disclosing a 'little bit' at a time" is subject to expert witness qualification requirements during sexual assault prosecutions. **See Commonwealth v. Williams**, 274 A.3d 722, 732 (Pa.Super. 2022), *appeal denied*, 2023 WL 109376 (Pa. Jan. 5, 2023) (holding that trial court abused its discretion by permitting PCA supervisor to give expert testimony that it is common for child victims to under-disclose sexual abuse to PCA interviewers, where PCA supervisor was not qualified as expert to provide such testimony).

not waive challenge to stewardship of PCRA counsel and observing that Superior Court should have provided PCRA court with opportunity to assess prejudice in first instance).

Our review of Appellant's brief, the relevant case law, and the existing record leads us to conclude that Appellant has advanced a proper argument regarding trial counsel's ineffectiveness for failing to object to Ms. Kline's testimony. **See Tedford, supra**; **Carson, supra**. Nevertheless, Appellant has not advanced a corresponding, layered claim regarding first PCRA counsel's ineffectiveness for failing to challenge trial counsel's inaction. Pursuant to **Bradley**, the current appeal was the right time to challenge first PCRA counsel's effectiveness. **See Bradley, supra** at ___, 261 A.3d at 401 (holding that "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal"). Absent more, we are left with a situation that arguably requires "further development of the record" in some regards, as well as an opportunity "for the PCRA court to consider [the new ineffectiveness] claims as an initial matter." **Id.** at ___, 261 A.3d at 402.

Mindful of the **Bradley** Court's mandate "to preserve an enforceable right to effective PCRA counsel," we conclude that the most prudent course of action is to vacate the order denying PCRA relief and remand this case for further proceedings. **Id.** at ___, 261 A.3d at 405. **See also McGill, supra**

- 16 -

at 591, 832 A.2d at 1024 (articulating "a general preference toward remanding cases currently pending in the PCRA appellate pipeline where the PCRA petitioner has not pled and/or presented a layered ineffectiveness claim in a manner sufficient to obtain merits review"). Upon remand, current counsel should file an amended PCRA petition on Appellant's behalf, wherein counsel more fully develops the ineffectiveness claims suggested from the current appeal. Thereafter, the court should conduct an evidentiary hearing to address the potential ineffectiveness of all prior counsel.

Order vacated; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/05/2023